UNITED STATES of America, Plaintiff–Appellee,

v.

Troy POWERS, Defendant–Appellant.

No. 94–3745.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 22, 1995.

Decided Feb. 8, 1996.

Patricia A. Tomaw (argued), Office of the United States Attorney, Springfield, IL, for Plaintiff–Appellee.

Michael B. Metnick, Richard D. Frazier, Fred Schlosser (argued), Metnick, Wise, Cherry & Frazier, Springfield, IL, for Defendant–Appellant.

Before BAUER, CUDAHY, and RIPPLE, Circuit Judges.

BAUER, Circuit Judge.

A jury convicted Troy Powers of conspiring with Harrison Richard King, Aaron Pearl, and others to distribute controlled substances, including cocaine and cocaine base, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). The district court sentenced him to 128 months imprisonment followed by five years supervised release. Powers appeals his conviction and sentence. We affirm.

### Witness Testimony

At trial, the government called several witnesses to testify about their involvement with King's drug distribution business and about statements made by King incriminating Powers. Powers asserts various claims of error regarding that testimony.

#### a. Relevancy

The district court allowed Donnell Hill, Frank Stephenson, Michael Tate, Patrick Wallace, Dorothy Gragg, and Kent Wallace to testify about their involvement in a separate drug conspiracy with King. (The government conceded at trial that Powers was involved in a separate conspiracy with King, that Powers "did tend to compartmentalize himself from King's other distributors," and that he was not involved in King's "overall" conspiracy with these witnesses.) Each testified about his or her involvement in King's well-established drug business, including how King would pool his money with other distributors to buy larger drug quantities at a cheaper price, how King's associates (in particular Dorothy Gragg) would drive to Chicago to purchase cocaine from King's source, and how King and his associates would divide the cocaine among those who had contributed money.

In addition, the witnesses testified about how they came to know Powers through their involvement with King. For example, Hill, Tate, and Stephenson delivered to Powers cocaine that King had brought back from Chicago. At other times, they were present when King delivered cocaine to Powers.

Powers helped King, Hill, Tate, and Stephenson divide large quantities of cocaine into smaller amounts. Hill picked up money from Powers and delivered it to King. Both Hill and Tate were present when King stopped at Powers' home to pick up money with which to purchase cocaine in Chicago. Gragg testified that she saw Powers give King money on two occasions. Further, Kent Wallace testified that he spoke with Powers and Pearl soon after federal agents conducted a seizure in Decatur, Illinois, and that Pearl and Powers told him that they lost $15,000 in that seizure.

Powers contends that the witnesses' testimony about their separate conspiracy with King was not relevant to Powers' conspiracy with King and Pearl. We generally review a challenge to the relevancy of evidence admitted by the district court for abuse of discretion. *United States v. Robinson*, 8 F.3d 398, 414 (7th Cir.1993). After reviewing the transcript, we have determined that defense counsel asserted foundation objections to parts of Hill's and Tate's testimony because they had not provided specific times for certain events or statements to which they testified, as well as several objections to the government's allegedly leading questions. However, the defense made no objections on relevancy grounds. Furthermore, much of the now challenged testimony occurred without any objection at all from the defense. Where, as here, no proper objection is made at trial, we review for plain error. *United States v. Olano*, 507 U.S. 725, 732–34, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993); *United States v. Mitchell*, 64 F.3d 1105, 1111 (7th Cir.1995).

Here, the indictment charged Powers with knowingly conspiring with others, including King and Pearl, to distribute controlled substances. The government had to prove that the charged conspiracy existed, that Powers was aware of the common purpose of the conspiracy, and that he participated willingly. *United States v. Monroe*, 73 F.3d 129 (7th Cir.1995). The testimony elicited from the witnesses involved in King's drug distribution network provided background information that was relevant to proving Powers' knowing and willing participation in the charged

conspiracy. For example, testimony about King's drug distribution organization at the time Powers asked for his assistance in establishing a drug business showed that Powers knew what King did and why Powers approached King. In addition, all of the witnesses (except Kent Wallace) testified that they saw Powers participate in specific drug activity, such as providing money to King or dividing large drug quantities into smaller amounts. Testimony about their involvement with King demonstrated how those witnesses came to see Powers participate in that specific drug-related activity. Defense counsel conceded at oral argument that some background information was necessary to prove the government's case, but that the extent of such testimony amounted to error. Even if we were to assume, for the sake of argument, that Powers had raised a proper objection, we nevertheless conclude that the district court did not commit error, let alone plain error.

b. *King's Statements Incriminating Powers*

■ Next, Powers challenges as inadmissible hearsay the admission of incriminating statements made about him by King. These statements generally involved either King's directions to his associates to deliver drugs to or pick up money from Powers, or King's descriptions of the drug activity between him and Powers. After reviewing the record, we conclude that Powers did not preserve this issue for appeal.[1] We therefore review for plain error. *United States v. Olano*, 507 U.S. at 732–34, 113 S.Ct. at 1777.

■ In order for a statement made by a member of a conspiracy to be admissible against other members of the conspiracy under Federal Rule of Evidence 801(d)(2)(E), the government must prove by a preponderance of the evidence that (1) a conspiracy

existed; (2) the defendant and the declarant were members of the conspiracy; and (3) the statement was made during the course and in furtherance of the conspiracy. *United States v. Stephenson*, 53 F.3d 836, 842 (7th Cir. 1995). King's directions to deliver drugs to or pick up money from Powers were admissible co-conspirator statements because a conspiracy between Powers and King existed and because those statements were made during the course and in furtherance of the conspiracy—they enabled King to carry out the drug distribution objective of his conspiracy with Powers. As for King's statements about his involvement with Powers, even if those statements were merely historical statements or idle chatter rather than admissible co-conspirator statements made in furtherance of King's conspiracy with Powers, *see United States v. Doerr*, 886 F.2d 944, 951 (7th Cir.1989), their admission nonetheless did not amount to plain error because it did not affect substantial rights. *United States v. Haywood*, 70 F.3d 507, 511 (7th Cir.1995). Exclusion of those statements would not have made a difference in the judgment. We need not disturb the district court's ruling.

c. *Other Claims of Error*

■ Powers also contends that the district court erred in allowing Kent Wallace to testify, over objection, that he spoke to Powers and Pearl after federal agents seized $69,000 in Decatur, Illinois. King and several others had pooled this money in order to buy cocaine. Unbeknownst to them, the drug source worked as an informant for the Drug Enforcement Agency (DEA). When King went to Decatur to purchase the cocaine, the DEA seized the $69,000. Wallace testified that on the day after the seizure, Powers and Pearl approached him and asked whether King had lost money in the sting operation. They then told Wallace that $15,000 of the $69,000 seized belonged to them.[2]

---

1. Powers did object to Hill's testimony about a conversation he had with King because the government had not yet offered independent proof of the conspiracy. However, the defense did not raise a hearsay objection to any of the specific statements challenged on appeal, and thus did not preserve the issue for appeal. Fed.R.Evid. 103(a)(1). *See United States v. Barker*, 27 F.3d

1287, 1292 (7th Cir.1994) (specific objection on other grounds will not preserve issue for appeal).

2. Powers contends that Wallace admitted in cross-examination that it was Pearl who made the statement. Wallace did not admit that. He merely acknowledged that in a report made earlier he had stated that Pearl told him that he and Powers had lost $15,000. He did not retract his

Powers contends that the district court erred in allowing Wallace to testify to this statement because it was inadmissible hearsay. The district court allowed Wallace to testify about the statement because it concluded that the statement was a co-conspirator statement made during the course and in furtherance of the conspiracy. *See* Fed. R.Evid. 801(d)(2)(E). We review the district court's admission of co-conspirator statements pursuant to Rule 801(d)(2)(E) for clear error. *United States v. Perez,* 28 F.3d 673, 677 (7th Cir.1994).

The challenged statement occurred in April 1992, during the time that Pearl and Powers were involved in their conspiracy with King (their conspiracy ended in May 1992). Whether a particular statement tends to advance the objectives of the conspiracy must be determined by the context in which it is made. *Garlington v. O'Leary,* 879 F.2d 277, 284 (7th Cir.1989) (citation omitted). The statement need not have been made exclusively, or even primarily, to further the conspiracy. *Id.* Here, the statement that $15,000 of the $69,000 belonged to them came in the context of Pearl's and Powers' attempt to get more information about the Decatur seizure. They approached Wallace on the day after the seizure because they wanted to know if King had lost $69,000 in the Decatur sting. Given the context of the challenged statement, a reasonable basis exists for concluding that the statement furthered the conspiracy. *Id.* The district court did not clearly err in finding the statement satisfied the elements of Rule 801(d)(2)(E).

Powers finally argues that Tate's testimony lacked sufficient foundation because he could not give *specific* dates for the events or statements that incriminated Powers. The district court's evidentiary rulings are entitled to substantial deference. *United States v. Kelly,* 14 F.3d 1169, 1173 (7th Cir. 1994). The fact that a witness cannot recall specific dates does not require exclusion of that testimony. Federal Rule of Evidence 602 requires that witnesses testify only on matters about which they have personal knowledge. *See United States v. Allen,* 10 F.3d 405, 414 (7th Cir.1993). The foundation laid for Tate's testimony satisfied Rule 602 because it established Tate's involvement with King and his interactions with Powers, and thus established that he had personal knowledge about the events or statements to which he testified. Tate's inability to pinpoint specific dates does not change this. Instead, it was a proper subject for cross-examination and impeachment. Powers had sufficient opportunity to cross-examine Tate and to explore his credibility. Furthermore, although Tate did not provide specific dates, he did offer general and reasonably limited time spans for the events or statements about which he testified. The district court did not err in allowing Tate to testify.

### Tape Recording

Powers asserts two claims of error concerning the admission into evidence of the transcript of a tape-recorded conversation between Pearl and Keith Harris. During that conversation, Pearl made several incriminating statements about his and Powers' involvement in selling cocaine. For example, Pearl told Harris that he, Powers and another individual lost money that they had given to King to buy cocaine when federal agents conducted a sting operation and seized the money. Powers contends that the conversation was inadmissible hearsay because it was not made in furtherance of the conspiracy. Powers also argues that the transcript of the conversation was admitted improperly because of the recording's poor quality. Both arguments fail.

Powers contends that Pearl's statements did not satisfy the third element for determining whether a statement is an admissible coconspirator statement, because they were not made "in furtherance" of the conspiracy. *See United States v. Stephenson,* 53 F.3d at 842. Although Powers' argument focuses on the conversation as a whole, we recognize that Rule 801(d)(2)(E) applies only to Pearl's statements. As noted above, we will reverse a district court's factual determination as to

---

testimony that both Powers and Pearl told him that. Even if Pearl alone made the statement, that would not change our conclusion that the

statement was admissible as a co-conspirator statement under Rule 801(d)(2)(E).

whether a statement falls within rule 801(d)(2)(E) only if that determination was clearly erroneous.

Pearl testified at trial that he went to Harris to "feel[ ] Keith Harris out" about a new source of drugs because he and Powers had lost money in the Decatur seizure and because King had told them that he might take a "break" from the business. Pearl further testified that he and Harris had been involved in dealing cocaine in 1989 and 1990, and that he knew that Harris' uncle "was one of the biggest drug dealers [in] East St. Louis." Indeed, during their conversation, Harris told Pearl that "I might be able to do something for you...." Because Pearl's statements to Harris were made to solicit Harris' assistance in finding a new drug source so that Pearl and Powers could continue to distribute cocaine, the district court did not clearly err in concluding that they were made in furtherance of the conspiracy and admitting them pursuant to Rule 801(d)(2)(E).[3]

 Powers further contends that the district court erred in admitting the transcript of Pearl's conversation with Harris. He focuses his challenge on the recording of that conversation rather than the transcript itself, and contends that the recording was so unintelligible as to be inadmissible. The decision whether to admit into evidence a recording containing inaudible or unintelligible portions is left to the district court's sound discretion. *Vukadinovich v. Zentz*, 995 F.2d 750, 753 (7th Cir.1993). A recording that is only partly unintelligible is admissible unless the unintelligible portions are "so substantial as to render the recording as a whole untrustworthy." *United States v. Robinson*, 956 F.2d 1388, 1395 (7th Cir.) (citation omitted), *cert. denied*, 506 U.S. 1020, 113 S.Ct. 654, 121 L.Ed.2d 581 (1992). Here, the court listened to the recording and concluded that, although some portions were not intelligible, the recording as a whole was not so unintelli-

gible as to be inadmissible. Based upon our review of the record, including the tape, we believe that the district court acted well within its discretion.

After the court overruled Powers' objection to the tape, Powers agreed that the transcript of the conversation could substitute for the tape recording. (The jury did not hear the recording.) Because the court already had found the tape sufficiently trustworthy to be admissible and because Powers agreed to the use of the transcript, the court properly admitted the transcript into evidence. *See United States v. Vega*, 72 F.3d 507, 512 (7th Cir.1995) (district court's decision to permit written transcripts of tape-recorded conversations reviewed for abuse of discretion).

*Jury Instructions*

 Powers next contends that the district court erred in refusing to give his proposed multiple conspiracy instruction. In reviewing jury instructions to which objections properly were raised in the proceedings below, we must determine from looking at the charge as a whole "whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine those issues." *United States v. Donovan*, 24 F.3d 908, 916–17 (7th Cir.) (citation omitted), *cert. denied*, — U.S. —, 115 S.Ct. 269, 130 L.Ed.2d 187 (1994). If the instructions accurately and fairly summarize the law, we will not disturb them on appeal. *Id.* at 917. The district court has substantial discretion with respect to the specific wording of instructions. *Id.*

Powers tendered the following instruction:

In order to find the defendant guilty of conspiracy as alleged in the Indictment, you must find that he is a member in a single conspiracy to distribute cocaine and crack cocaine rather than more than one

---

**3.** During the sidebar discussion concerning defense counsel's objection to admission of the conversation on hearsay grounds, the district court questioned whether the entire transcript should be admitted and suggested that the government and the defense select portions of the conversation for presentation to the jury. De-

fense counsel then stated that the entire conversation, rather than a redacted version, should be used because "the discussion [about the seized money] is such a small part of the overall discussion in here that I'm afraid to highlight and only play those portions would give this tape and this discussion greater significance."

conspiracy to distribute cocaine and crack cocaine.

The district court declined to give the instruction. However, the court did advise the defendant that it would "give an instruction that accurately states the law, so if you want to take ten minutes or so and try to come up with some additional wording, I'll consider it." The court further noted that the evidence suggesting more than one conspiracy was "extremely weak." Despite the opportunity to do so, the defendant did not tender an alternative multiple conspiracy instruction. The court then instructed the jury, in relevant part:

> In determining whether the defendant became a member of the conspiracy, you may consider only the evidence concerning the acts and statements of that particular defendant. In determining what the defendant's actions and statements were, you may consider all of the evidence presented, including all the conduct and statements of the other alleged participants and all the circumstances of the case.... To sustain the charge of conspiracy to distribute cocaine or cocaine base, that is crack, as charged in the indictment, the Government must prove the following propositions. First: That the alleged conspiracy existed. Second: That the defendant knowingly and intentionally became a member of the conspiracy. If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty. If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

In this case, the district court's instructions informed the jury that it could not convict the defendant if it found that he belonged to a conspiracy other than the single conspiracy charged. The instructions included repeated references to the government's burden to prove that the defendant willfully joined the charged conspiracy. This certainly was sufficient. *See United States v. Durman,* 30 F.3d 803, 809 (7th Cir.1994),

*cert. denied sub nom. Castellanos v. United States,* —— U.S. ——, 115 S.Ct. 921, 130 L.Ed.2d 801 (1995). Furthermore, Powers has not asserted that he suffered any prejudice from the district court's refusal to give the tendered instruction. Absent prejudice, we see no reason to quibble with the instructions as given. *See United States v. Townsend,* 924 F.2d 1385, 1410 (7th Cir.1991). The district court acted well within its discretion in declining to give Powers' tendered multiple conspiracy instruction.

### Sentencing

▇▇▇ Powers finally asserts that the district court erred in calculating the quantity of drugs attributable to him for sentencing purposes. We review this claim for clear error. *United States v. Edwards,* 36 F.3d 639, 648 (7th Cir.1994). Powers contends that the court should not have included 28.35 grams of cocaine base (about which Stephenson testified) in calculating his base offense level because Stephenson was not a credible witness and because Pearl (whom the defendant deems "the most credible witness") had stated that Powers never dealt in cocaine base. Yet it is the district court that evaluates witness credibility, and we will not disturb that determination unless it lacks foundation. *United States v. Porter,* 23 F.3d 1274, 1278 (7th Cir.1994) ("Any argument that the trial judge should have believed a certain witness is 'doomed at the outset.'"). It was well within the district court's prerogative to credit Stephenson's testimony and hold Powers accountable for the cocaine base, despite Pearl's assertions to the contrary. The district court's calculation of the amount of drugs attributable to Powers did not amount to error, let alone clear error.

### Conclusion

For the foregoing reasons, we affirm the defendant's conviction and sentence.

AFFIRMED.