**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Emerson PARRISH, Defendant–Appellant.**

No. 02–3272.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 28, 2003.

Decided Feb. 3, 2003.

Before ROVNER, EVANS, and WILLIAMS, Circuit Judges.

ORDER

Emerson Parrish challenges his conviction for conspiracy to possess with intent to distribute crack in violation of 21 U.S.C. §§ 846 and 841(a)(1). Parrish was also charged with one count of possession with intent to distribute crack, *see id.* § 841(a)(1), but the jury acquitted him of that charge. Parrish argues that his acquittal on the possession charge establishes that the government offered insufficient evidence to prove his guilt on the conspiracy charge. We affirm.

Isaac Carlisle was indicted on both counts along with Parrish. Carlisle pleaded guilty to the possession count and, in exchange for the government dropping the conspiracy count, testified against Parrish. According to Carlisle's testimony, in February 2002 a confidential informant ("CI") contacted him to buy an ounce of crack. They arranged a time to meet, and Carlisle called Parrish to bring the crack. Parrish, Carlisle and the CI then met in Parrish's car, but when Parrish "pulled out the crack," the CI said that he did not have the money with him and would need a half hour to get it.

After meeting with Carlisle and Parrish, the CI met with the police, who gave him the "buy money" and searched him for drugs. The CI then called Carlisle and asked for an extra half ounce of crack. He told Carlisle to "[t]ell your boy to work wit [sic] me," and Carlisle consulted with Parrish and quoted a price of $1350. The conversation between the CI and Carlisle was recorded and played for the jury.

Carlisle testified that he and Parrish then went to Parrish's house to get the extra half ounce of crack. He testified that Parrish went into the house and came out with the crack. They then drove in Parrish's car to meet the CI, who got into the car to complete the deal. The CI gave the money to Carlisle, who counted it and gave it to Parrish. When asked why he handed the money to Parrish, Carlisle testified, "Because some of the money was his." After receiving the crack from Carlisle, the CI left the car, and the police arrested Carlisle and Parrish. The police found the pre-recorded "buy money" in the front center cup holder of Parrish's car.

Detective Miguel Rivera testified at trial that he interviewed Parrish after administering *Miranda* warnings. Rivera testified that Parrish admitted that he knowingly drove Carlisle to deliver crack and that he witnessed the deal. Rivera said that when he accused Parrish of being Carlisle's crack supplier, Parrish "started getting really nervous, sweated a little, and [indicated that] he didn't want to talk anymore."

Parrish argues that his conspiracy conviction should be reversed because the premise for that conviction was that he was Carlisle's crack supplier, but the jury found him not guilty of possession with intent to distribute crack. He contends that the "inconsistent verdicts" prove that the evidence was insufficient to support his conspiracy conviction. That argument, however, is foreclosed by this circuit's line of cases holding that an acquittal on a possession count does not automatically render insufficient the evidence in support of a conspiracy conviction. *United States v. Billops*, 43 F.3d 281, 285 (7th Cir.1994); *United States v. Campbell*, 985 F.2d 341, 345–46 (7th Cir.1993); *United States v. Brown*, 934 F.2d 886, 889 (7th Cir.1991); *see also United States v. Powell*, 469 U.S.

57, 65, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) (explaining that a jury may render inconsistent verdicts for reasons other than innocence, such as "mistake, compromise, or lenity"). Moreover, the verdicts are not really inconsistent and are, at best, merely different. Thus, because Parrish's acquittal on the possession charge does not require reversal of his conviction on the conspiracy charge, the question then becomes simply whether the evidence against Parrish was sufficient to support his conspiracy conviction.

Normally, we would review an argument of insufficient evidence by asking whether, when viewed in the light most favorable to the government the evidence would allow a rational trier of fact to find "the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *accord United States v. Owens*, 301 F.3d 521, 527 (7th Cir.2002). Parrish, however, did not preserve normal review because he did not move for judgment of acquittal at the close of trial or within seven days of the verdict. Fed. R.Crim. P 29; *United States v. Hoover*, 175 F.3d 564, 571 (7th Cir.1999). Thus, our review is limited to plain error, which in this context is present only if Parrish's conviction amounts to a manifest miscarriage of justice. *See Owens*, 301 F.3d at 528. Under that standard, we would reverse "only if the record is devoid of evidence pointing to guilt, or if the evidence on a key element of the offense was so tenuous that a conviction would be shocking." *United States v. Taylor*, 226 F.3d 593, 597–98 (7th Cir.2000) (quotation marks and citation omitted).

To be guilty of participating in a conspiracy to possess and distribute crack, the defendant must have knowingly and intentionally agreed with another to commit the unlawful act. *United States v. Dumes*, 313 F.3d 372, 382 (7th Cir.2002). "No overt

act need be charged or proven, and guilt may be inferred by the circumstances and the conduct of the parties." *Id.; accord United States v. Shabani,* 513 U.S. 10, 15, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994).

Parrish contends that the evidence was insufficient because Carlisle's testimony–the only evidence, he argues, offered to support a conspiracy–was not credible. But we will not reassess the credibility of a witness when evaluating a claim of insufficient evidence. *United States v. Griffin,* 310 F.3d 1017, 1022 (7th Cir.2002). Moreover, Carlisle's testimony is not incredible merely because he testified pursuant to a plea agreement with the government. *See United States v. Ofcky,* 237 F.3d 904, 908–09 (7th Cir.2001); *United States v. Jewel,* 947 F.2d 224, 231 (7th Cir.1991).

In any event, there was sufficient evidence to corroborate Carlisle's testimony. First, the audiotape of the CI's conversation with Carlisle reveals that Carlisle consulted with someone when the CI asked for an extra half ounce of crack and told him to "[t]ell your boy to work wit [sic] me." Thus, the audiotape corroborates Carlisle's testimony that he consulted with Parrish to quote $1350 for an ounce and a half of crack. Additionally, police recovered the "buy money" in the cup holder of Parrish's car. Thus, the location of the money .corroborates Carlisle's testimony that he gave the money to Parrish after counting it. Finally, Parrish admitted that he knowingly drove Carlisle to the arranged meeting place to conduct a drug transaction. *See United States v. Castillo,* 148 F.3d 770, 774 (7th Cir.1998) (evidence that defendant knowingly transported drugs and provided lodging to others who were going to distribute it was sufficient to uphold a conspiracy conviction). Parrish also got nervous and started sweating when the detective accused him of being Carlisle's crack supplier. The existence of this corroborating evidence, along with Carlisle's testimony, establishes that the record is not "devoid of evidence pointing to guilt," *Taylor,* 226 F.3d at 597, and that the jury had sufficient evidence to find Parrish guilty of conspiring to possess with intent to distribute crack. Accordingly, we affirm Parrish's conspiracy conviction.